Vincenzo **GALLINA**, Relator-Appellant,

v.

Donald **FRASER**, Respondent-Appellee.

No. 192, Docket 25760.

United States Court of Appeals
Second Circuit.

Argued Feb. 5, 1960.

Decided May 5, 1960.

George A. Athanson, Hartford, Conn., for appellant.

David A. Botwinik, of Fink & Pavia, New York City (Vincent J. Scamporino, Middletown, Conn., on the brief), for appellee.

Before MEDINA and WATERMAN, Circuit Judges, and MADDEN, Judge, U. S. Court of Claims.*

WATERMAN, Circuit Judge.

On June 6, 1958, pursuant to a request by the Republic of Italy, the Secretary of State issued a certificate authorizing the arrest of relator Vincenzo Gallina and the institution of extradition proceedings as provided in 18 U.S.C. § 3184. After hearings were held on various days in July, August, and September, 1958, the Commissioner, on September 30, 1958, held that relator was subject to extradition and ordered him taken into custody to await issuance of a warrant by the Secretary of State. On October 2, 1958 relator filed an application for a writ of habeas corpus in the United States District Court for the District of Connecticut. After various procedural occurrences not here in issue, on May 15, 1959 Judge Smith held that the writ would not lie, discharged the show cause order previously issued, and ordered relator retained in custody. Judge Smith's opinion is reported at 177 F.Supp. 856. We affirm his action and adopt his opinion as our own save as it is supplemented herein with respect to one of the contentions raised by relator, contention (3) at 177 F.Supp. 860–861.

█ After his departure from Italy relator was convicted there *in absentia* according to established Italian procedure. Relator contended before Judge Smith and contends before us that if he is extradited Italy will imprison him without retrial and without granting him an opportunity to face his accusers or to conduct any defense. We are informed that the Secretary of State as a condition of surrender of persons demanded by the Italian Government, has required in similar cases that there be a retrial of persons who have been convicted *in absentia*. But, leaving this point to one side, we have discovered no case authorizing a federal court, in a habeas corpus proceeding challenging extradition from the United States to a foreign nation, to inquire into the procedures which await the relator upon extradition. There is nothing in Holmes v. Jennison, 1840, 14 Pet. 540, 39 U.S. 540, 568, 10 L.Ed. 579; Grin v. Shine, 1902, 187 U.S. 181, 184, 23 S.Ct. 98, 47 L.Ed. 130; or in Ex parte La Mantia, D.C.S.D.N.Y.1913, 206 F. 330 and Ex parte Fudera, D.C.S.D.N.Y.1908, 162 F. 591, appeal dismissed, 219 U.S. 589, 31 S.Ct. 470, 55 L.Ed. 348, indicating that the foreign proceedings must conform to American concepts of due process. Holmes v. Jennison dealt with a state's power to comply with the extradition request of a foreign nation. The language relator relies upon in Grin v. Shine refers to the necessity for due process in the extradition proceedings before the United States Commissioner. Language in La Mantia and Fudera to the effect that in a habeas corpus proceeding the federal court will treat a foreign conviction *in absentia* merely as a criminal charge against the relator is not to be construed as a statement that the federal court may, as a condition for discharging the writ, require retrial in the foreign

* Sitting by designation.

country. This language, instead, refers to the rule that a foreign conviction *in absentia* does not preclude the federal court from considering whether sufficient evidence of the relator's criminality has been presented in the extradition proceeding before the United States Commissioner. See United States ex rel. Argento v. Jacobs, D.C.N.D.Ohio 1959, 176 F.Supp. 877. The authority that does exist points clearly to the proposition that the conditions under which a fugitive is to be surrendered to a foreign country are to be determined solely by the non-judicial branches of the Government. The right of international extradition is solely the creature of treaty, Factor v. Laubenheimer, 1933, 290 U.S. 276, 287, 54 S.Ct. 191, 78 L.Ed. 315. Hence, if the extradition treaty so provides, the United States may surrender a fugitive to be prosecuted for acts which are not crimes within the United States, Factor v. Laubenheimer, supra, 290 U.S. at page 300, 54 S.Ct. 191. We regard it as significant that the procedures which will occur in the demanding country subsequent to extradition were not listed as a matter of a federal court's consideration in Ornelas v. Ruiz, 1896, 161 U.S. 502, 508, 16 S.Ct. 689, 40 L.Ed. 787; and we regard it as equally significant that, in refusing to enjoin the Secretary of Defense from turning over an American soldier for prosecution in Japanese courts on charges of having committed crimes on Japanese soil, the Supreme Court gave no consideration to the procedures that would prevail in the Japanese courts, Wilson v. Girard, 1957, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544. We note that in the field of interstate extradition it would appear that power to impose conditions under which a fugitive is to be surrendered lies solely in the hands of the Governor of the asylum state: Kentucky v. Dennison, 1860, 24 How. 66, 65 U.S. 66, 16 L.Ed. 717; Taylor v. Taintor, 1872, 16 Wall. 366, 83 U.S. 366, 21 L.Ed. 287; Marbles v. Creecy, 1909, 215 U.S. 63, 69–70, 30 S.Ct. 32, 54 L.Ed. 92; Sweeney v. Woodall, 1952, 344 U.S. 86, 73 S.Ct. 139, 97 L.Ed. 114,

rehearing denied, 344 U.S. 916, 73 S.Ct. 332, 97 L.Ed. 706. Nevertheless, we confess to some disquiet at this result. We can imagine situations where the relator, upon extradition, would be subject to procedures or punishment so antipathetic to a federal court's sense of decency as to require reexamination of the principle set out above. This is not such a case. There were two convictions *in absentia*. In one relator was, apparently, represented by counsel. In the other relator was tried along with his alleged associates who were present before the court and who were also convicted. We affirm the determination by Judge Smith that the conditions under which relator is to be surrendered to Italy must remain in the hands of the State Department.

Finally, we wish to commend the conscientious and able manner in which appointed counsel for relator has fulfilled his duties.

Affirmed.