**Jan STARKS, Plaintiff,**

v.

**Robert C. SEAMANS, Secretary of the Air Force of the United States, Defendant.**

**Civ. A. No. 71-C-39.**

United States District Court, E. D. Wisconsin.

Dec. 15, 1971.

Robert D. Repasky, and Seymour Pikofsky, Milwaukee Legal Services, Milwaukee, Wis., for plaintiff.

David J. Cannon, U. S. Atty. by Steven C. Underwood, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

OPINION AND TEMPORARY RESTRAINING ORDER

JOHN W. REYNOLDS, Chief Judge.

This case concerns a serviceman who while stationed in the Republic of China (Taiwan) was charged, tried, and convicted by China of a drug offense pursuant to an Executive "Agreement Between the United States of America and the Republic of China on the Status of United States Armed Forces in the Republic of China," TIAS 5986, 17 UST 373. The plaintiff is presently in the custody of the United States Air Force and is scheduled to be handed over to the Chinese authorities in less than thirty-six hours. This action is brought to permanently enjoin such a turnover, and a temporary restraining order is sought to stay the scheduled turnover until a determination on the merits.

The plaintiff asserts that his trial in the Chinese court was a mockery of jus-

tice, that the court was biased, and that the trial judge denied plaintiff the opportunity to confront the witnesses against him by interrogating persons *in camera*. In an effort to substantiate these claims plaintiff has sought production of certain documents from the United States, including a report made by the Air Force trial observer who apparently expressed vigorous objections to the fairness of the trial. Defendant has failed to produce any of the requested documents, offers no excuse for the failure, and otherwise does not contest plaintiff's assertions. Accordingly, for the purpose of this motion and *for this purpose only*, I will assume that plaintiff's trial was in fact a mockery of justice.

The Executive Agreement between the United States and the Republic of China which arranges for the surrender of servicemen by the United States for trial before Chinese courts also agrees that:

> "Whenever a member of the United States armed forces or civilian component, or a dependent, is prosecuted under the jurisdiction of the Republic of China, he shall be entitled:

> "(a) to a prompt and speedy trial;

> "(b) to be informed, in advance of trial, of the specific charge or charges made against him;

> "(c) to be confronted with the witnesses against him;

> "(d) to have compulsory process for obtaining witnesses in his favor * * *;

> "(e) to have legal representation of his own choice * * *;

> "(f) * * * to have the service of a competent interpreter; and

> "(g) to communicate with a representative of the United States Government * * *." Article XIV, ¶ 9.

As I assume that plaintiff's trial was a mockery of justice, I must conclude that the manner in which the trial was conducted was a violation of the Executive Agreement.

I find for the *purposes of this motion only* that in light of the clear irreparable injury that is about to befall plaintiff, there is a sufficient probability of success that ultimately it will be found that a trial in accord with the Executive Agreement is a condition precedent to the United States turning over a serviceman to the Republic of China for serving his sentence.

The cases which defendant cites deal with fact situations significantly different from that before me today. Wilson v. Girard, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957), dealt with whether the United States in accord with an Executive Agreement could turn a serviceman over *for trial* before a Japanese court for murder. The record contained a statement by the Secretaries of Defense and State informing the court that Japan had agreed to grant procedural rights similar to those granted by the Republic of China in the instant case and concluded by stating:

> "There is every reason to believe that [the] trial * * * in the Japanese courts will be conducted with the utmost fairness." 354 U.S. at 548, 77 S.Ct. at 1420.

Apparently this assertion was uncontested. Further, there was no argument that Japan was in violation of the agreement. Similarly, in Smallwood v. Clifford, 286 F.Supp. 97 (D.C.1968), plaintiffs were attempting to prevent a transfer before trial, and Korea was not alleged to be in violation of the Executive Agreement. Finally, while Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913), held that an individual could not assert violations of an extradition treaty as a defense to extradition when the violations had little to do with him and had clearly been tacitly forgiven by the State Department, discussion earlier in the same opinion suggests that violations which are directly relevant and of a condition precedent nature may in fact be raised as a defense. 229 U.S. at 462–465, 33 S.Ct. 945.

Given the facts as the Government's silence has forced me to assume them, failure to grant a temporary restraining order in this matter would result in a "punishment [to plaintiff completely] * * * antipathetic to a federal court's sense of decency." Gallina v. Fraser, 278 F.2d 77, 79 (2d Cir. 1960).

Accordingly:

It is ordered that the defendant be and he hereby is enjoined from discharging the plaintiff from military custody or transferring custody of the plaintiff pending final hearing and determination of this cause.